UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brett Post,<br><br>                Plaintiff,<br><br>    v.<br><br>John F. Otto, Inc.,<br><br>                Defendant. | No. 2:20-cv-01174-KJM-AC<br><br>ORDER |

Plaintiff Brett Post sues Defendant John F. Otto, Inc., doing business as Otto Construction, for terminating his employment soon after he sought leave under the Family and Medical Leave Act. *See* Compl., Not. Removal at 12–26, ECF No. 1-1.  Otto moves for summary judgment. *See generally* Mot. Summ. J., ECF No. 11.  It is undisputed that Otto had already decided to terminate Post for legitimate, nondiscriminatory reasons before he requested leave, so the motion is **granted**.

**I.     UNDISPUTED FACTS**

After reviewing the record, the court has determined the following facts are undisputed.[1] Otto hired Post in 1998, and he worked at will as a superintendent until his termination.  Def.

---

[1] Both parties object to evidence cited by the other.  *See* Pl. Opp'n to Def. Obj., ECF No. 17; Def. Obj. to Pl. Opp'n, ECF No. 18.  The court has not relied on the evidence cited in these objections, so they are moot.

1 Resp. Stmt. Facts (Undisp. Facts) Nos. 2, 4, ECF No. 16-1.  In Fall 2019, Carl Barrett, Otto's
2 president, and Robert Ussery, a general superintendent, assigned Post a high-profile project, the
3 North Natomas Aquatic Park Project.  *Id.* Nos. 14–15.  They were reluctant to give Post this
4 assignment because of his recent history of weak interpersonal and communication skills, but
5 they hoped it would motivate him to improve.  *Id.* Nos. 15–16; Barrett Decl. ¶ 9, ECF No. 11-4;
6 R. Ussery Decl. ¶ 5, ECF No. 11-7; *see also* Performance Review 2017, Ex. 1 at 11–12, ECF No.
7 11-7 (mentioning problems with communication and teamwork); Performance Review 2018, Ex.
8 2 at 16, 19, ECF No. 11-7 (same); Performance Review 2019, Ex. 3 at 23, 26, ECF No. 11-7
9 (same).[2]  In years past, by contrast, Post had received generally more positive reviews, and he had
10 risen through the ranks to become a superintendent without discipline.  *See* Performance Reviews
11 2009, 2011–2013, Bowman Decl. Ex. 2, ECF No. 13-2; *see also* Opp'n at 1 (citing Undisp. Facts
12 Nos. 4–5).

13 After receiving the assignment, Post learned he needed a knee replacement, which would
14 require six weeks' recovery.  Undisp. Facts Nos. 58–59; Post Dep., Bowman Ex. 1 at 7–9, ECF
15 No. 13-2.  A surgery could not be scheduled for several more months, and the available dates
16 conflicted with Post's work schedule, so he asked to be notified if an earlier surgery date became
17 available.  Undisp. Facts No. 60.  He did not tell Otto about his need for surgery or mention a
18 possible leave.  *Id.* No. 42.

19 A few days later, Post had a meeting with Ussery to discuss his job performance.  *Id.* No.
20 22.  During that meeting, Ussery "developed serious concerns" Post would "abandon the Aquatic
21 Park Project."  R. Ussery Decl. ¶ 7.  Ussery again had concerns with Post's poor communication
22 and teamwork efforts.  Perf. Rev. 2019, Ex. 3 at 21–26.  Robert Ussery's nephew Gary, who
23 worked for Otto as an assistant superintendent, also met with Post for a performance evaluation.
24 R. Ussery Decl. ¶¶ 9–11; G. Ussery Decl. ¶ 6, ECF No. 11-6; Mem. P. & A. at 7, ECF No. 11-1.
25 Gary reported to Robert that Post had called him a "retard" and said Post was treating colleagues
26 "terribly."  R. Ussery Decl. ¶ 9; G. Ussery Decl. ¶ 5; Undisp. Facts No. 30.  Robert decided to fire
27 Post, and Barrett approved.  R. Ussery Decl. ¶ 10; Barrett Decl. ¶ 10.

---

[2] For all exhibits, the court cites the page numbers assigned by its CM/ECF system.

2

On the same day, Post scheduled his knee surgery for the next month. Undisp. Facts Nos. 41, 62. He did not tell Otto. *Id.* No. 42.

The next day, a Friday, Robert Ussery asked Forrest Stuckey, another superintendent, to take over the Aquatic Park Project and told him Otto was firing Post. Stuckey Decl. ¶¶ 1–6, ECF No. 11-5. On Monday, Stuckey confirmed he would take over the project at the end of the week. *Id.* ¶ 5. Stuckey was fifty-two or fifty-three at the time, approximately nine years younger than Post. *See id.* Nos. 1, 36. Ussery and Barrett decided Friday would be Post's last day. Barrett Decl. ¶ 12; R. Ussery Decl. ¶ 14. They did not know about Post's upcoming surgery or knee problems. Undisp. Facts No. 42.

On the Wednesday before the planned termination, Post told Barrett about his upcoming surgery and requested medical leave. Undisp. Facts Nos. 41, 63. They discussed his leave, including pay options and how to notify colleagues. *Id.* No. 63. On Thursday, Post spoke to his coworkers about his leave during a team meeting. *Id.* No. 64; Post Dep. at 17. Later in the day, Post received a message asking him to meet with Ussery the next morning. Post Dep. at 18. As planned, Barrett and Ussery ended Post's employment when they met on Friday morning. Undisp. Facts No. 43. And as planned, Stuckey took over the Aquatic Park Project. Stuckey Decl. ¶ 6.

Post filed this action to assert claims of wrongful termination on the basis of his request for leave and his age. Undisp. Facts No. 48. His complaint includes claims for "violation," retaliation, and interference under the California Family Rights Act (CFRA) and Family Medical Leave Act (FMLA) and for wrongful termination and age discrimination in violation of the California Fair Employment and Housing Act (FEHA). *See* Compl. ¶¶ 16–77 (citing 29 U.S.C. § 2612, Cal. Gov't Code § 12945.2, and Cal. Gov't Code §§ 12940 *et seq.*). Otto moves for summary judgment on all of these claims, *see generally* Mot. Summ. J., ECF No. 11, and the court received full briefing, *see generally* Opp'n, ECF No. 13; Reply, ECF No. 16. The court originally submitted the matter without a hearing, but after reviewing the parties' filings, the court reset the matter for hearing. Min. Order, ECF No. 14; Order, ECF No. 21. The court held a hearing by videoconference on January 21, 2022. Robert Bowman appeared for Post. Carolyn

3

1 Burnette appeared for Otto. The matter was submitted for decision at the conclusion of the
2 hearing.³

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

/////
/////
/////
/////

---

³ Otto submitted an unauthorized supplemental brief after the matter was submitted. ECF No. 25. The court has not considered that filing. *See* Standing Order at 3, ECF No. 2-1 ("No supplemental brief shall be filed without prior leave of court.").

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III.   ANALYSIS

#### A.   Wrongful Termination

The court begins with Post's termination claims under the FMLA and CFRA. "The FMLA creates two interrelated, substantive employee rights . . . ." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). It allows covered employees up to twelve weeks' family and medical leave per year, and it guarantees employees the right to be restored to their original or equivalent position when they return. 29 U.S.C. §§ 2612(a), 2614(a). The CFRA is California's counterpart to the FMLA and mirrors the federal provisions. Cal. Gov't Code § 12945.2(a) (authorizing twelve weeks' leave for covered employees and the right to return to the "same or a comparable position"); *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4 (9th Cir. 2003) (analyzing CFRA and FMLA claims interchangeably); *Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 919 (Cal. 2015) (same).

Employees may assert two claims under the FMLA and CFRA. First, an employee may recover damages by demonstrating the employer interfered with the employee's right to take leave. *See* 29 U.S.C. § 2615(a)(1); Cal. Gov't Code § 12945.2(q). Second, an employee may recover for harms suffered in retaliation for opposing activities made unlawful by the two statutes. *See* 29 U.S.C. §§ 2615(a)(2); Cal. Gov't Code § 12945.2(k). Post has cited no authority to support his generic claims for "violations" of the FMLA and CFRA, *see* Compl. ¶¶ 16–32, and the court is aware of none. Summary judgment is granted on these "violation" claims.

The Ninth Circuit and California courts draw a bright line between interference and retaliation claims. *Bachelder*, 259 F.3d at 1124; *Richey*, 60 Cal. 4th at 920. Interference claims encompass a broad variety of adverse employment actions for exercising rights under the FMLA, including termination. *Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 955 (D. Idaho 2012). By

contrast, the statutes' retaliation provisions are construed narrowly. *See Xin Liu*, 347 F.3d at 1133 n.7. A retaliation claim is sustainable only when an employee actually opposes an unlawful practice. *Id.* This narrow interpretation flows from a United States Department of Labor regulation, which provides that employees "are protected from retaliation for opposing (e.g., filing a complaint about) any practice which is unlawful" under the FMLA. 29 C.F.R. § 825.220(e). This does not mean employees have no remedy when they suffer adverse consequences after taking leave; such a claim is analyzed as an interference claim. *See, e.g.*, *Dela Cruz v. Brennan*, No. 10-01140, 2021 WL 23295, at *3 (N.D. Cal. Jan. 4, 2021).

Post's retaliation claims do not fit the narrow category of viable retaliation claims. He does not claim to have opposed a policy, and he does not claim to have filed a complaint. *See* Opp'n at 6–8; *see generally* Bowman Decl., ECF No. 13-2. It is undisputed that Post never complained of retaliation during his employment. Undisp. Facts No. 44. The only complaint Post filed was his discrimination complaint to the California Department of Fair Employment and Housing after his termination. Not. Removal Ex. A, at 28–30. Because Post cannot show he opposed an action made unlawful by the FMLA or that he believed to be unlawful, the court grants summary judgment on Post's FMLA and CFRA retaliation claims.

Moving, then, to the interference claims, Post can prevail only if he shows "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.'" *Crawford v. JP Morgan Chase*, 983 F. Supp. 2d 1264, 127 (W.D. Wash. 2013) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)).

In this case, the final element is dispositive. To prevail at trial, Post would need to show, among other things, that "he was harmed by the violation." *Bushfield*, 912 F. Supp. 2d at 955. As a result, to survive summary judgment, he must show "a causal connection" between an adverse employment action and his request for leave. *Newell v. Ariz. Bd. of Regents*, No. 18-01903, 2020 WL 1694735, at *4 (D. Ariz. Apr. 7, 2020). A plaintiff may use direct or circumstantial evidence to prove causation. *Perez-Denison v. Kaiser Found. Health Plan of the*

*Nw.*, 868 F. Supp. 2d 1065, 1080 (D. Ore. 2012). However, "the FMLA is not a strict-liability statute." *Edgar v. JAC Products*, 443 F.3d 501, 507 (6th Cir. 2006). An employer can defeat an FMLA interference claim by showing it would have terminated the employee regardless of the employee's request for leave, for example by showing it had decided to terminate the employee before the employee requested leave. *Perez-Denison*, 868 F. Supp. 2d at 1080–81. This is an affirmative defense; the burden is on the employer to prove an employee would have been dismissed. *Bushfield*, 912 F. Supp. 2d at 959. The court need not determine how compelling Otto's reason is for terminating Post, so long as it is legitimate, nondiscriminatory, and not prohibited by the FMLA. *Perez-Denison*, 868 F. Supp. 2d at 1083.

To show there is no link between Post's request for leave and his termination, Otto offers evidence from three employees—Barrett, Robert Ussery and Stuckey—showing the company had already decided to fire him for legitimate reasons by the time he asked for leave. Barrett Decl. ¶ 10; Stuckey Decl. ¶ 4; R. Ussery Decl. ¶¶ 6–7, 10. Barrett and Ussery attest they decided to terminate Post for two reasons: concerns about Post's management of the Aquatic Park Project and dissatisfaction with his "attitude, internal communications and treatment of coworkers and subordinates." Barrett Decl. ¶ 10; R. Ussery Decl. ¶¶ 6–11. Stuckey confirms Otto asked him to take over the Aquatic Park Project because Post would be fired, and this happened before Post told the company he needed time for his surgery. *See* Stuckey Decl. ¶ 4.

Post's performance evaluations from 2017, 2018 and 2019 corroborate these claims about Otto's motivations and show the company's concerns were longstanding. *See* Perf. Rev. 2017, Ex. 1 at 11–12; Perf. Rev. 2018, Ex. 2 at 16, 19; Perf. Rev. 2019, Ex. 3 at 23, 26. Although the Ninth Circuit has cautioned against relying on subjective evaluations such as these, that warning applies only to evaluations conducted after employees have exercised their rights. *See Xin Liu*, 347 F.3d at 1136–37. If an employer conducts evaluations after learning its employee has requested leave, for example, those evaluations could be "tainted" by the employer's disregard for the employee's leave request. *Id.* at 1137. Here, Post's evaluations were conducted before he requested leave, so they cannot have been "tainted" by his request for leave. *See generally* Perf. Rev. 2017, Ex. 1; Perf. Rev. 2018, Ex. 2; Perf. Rev. 2019, Ex. 3.

1    This conclusion withstands Post's argument that he had received more positive reviews
2    many years before. These older reviews do not contradict the company's evidence showing it
3    was not satisfied with his performance leading up to the time of his termination. Perf. Rev. 2009,
4    2011-2013, Bowman Decl. Ex. 2; Opp'n at 7–8; *see also, e.g.*, *Holtzclaw v. Certainteed Corp.*,
5    795 F. Supp. 2d 996, 1010 (E.D. Cal. 2011) (performance reviews from 1995 through 2004 not
6    relevant to 2008 termination). On this record, it is undisputed Otto had a legitimate,
7    nondiscriminatory and permissible reason to fire Post.

8    Post has not cited evidence to the contrary. He relies heavily on conversations with
9    colleagues about his upcoming leave in the days immediately before his termination. *See* Undisp.
10   Facts No. 64; Post Dep. at 15–18. He argues these discussions could show Otto had not finalized
11   its plans to fire him, so his leave request might have had an influence. *See* Opp'n at 7–8. This is
12   only speculation, and speculation does not suffice at summary judgment. Fed. R. Civ. P.
13   56(c)(1); *Matsushita*, 475 U.S. at 586. Post argues relatedly that the same conversations show
14   Otto's decision to terminate him may have been pretextual. Opp'n at 7. This argument
15   improperly imports a burden-shifting schema into the FMLA. "[T]here is no room for a
16   *McDonnell-Douglas* type of pretext analysis when evaluating an 'interference' claim under [the
17   FMLA]." *Bachelder*, 259 F.3d at 1131. No evidence ties the conversations to Otto's decision,
18   and by the time Post was having these discussions, Otto's evidence shows without contradiction
19   that its decision was final and unambiguous.

20   Post also points out that Barrett did not tell Post he would be fired in response to his
21   request for leave. *See* Opp'n at 7. Again, this evidence does not contradict the evidence that Otto
22   had already decided to terminate Post's employment. A jury might very well decide that Barrett's
23   silence was misleading or confusing, but that finding would not be relevant. Post has not cited
24   authority showing Otto should have rejected his leave request or disclosed its plan to fire him in
25   response to his request for leave, and the court is aware of none. Post's "personal impressions"
26   do not create a triable issue of fact. *Newell*, 2020 WL 1694735, at *6.

27   Nor can Post succeed by showing he was fired so soon after requesting leave. Opp'n at 6–
28   7. Circumstantial evidence such as this can, in some cases, support an interference claim. *See,*

*e.g.*, *Newell*, 2020 WL 1694735, at *4. This may even be so if an employer claims it developed legitimate concerns, if those concerns arose after the employee requested leave. *See, e.g.*, *McKenna v. Permanent Med. Grp., Inc.*, No. 12-00849, 2013 WL 3766769, at *6 (E.D. Cal. July 16, 2013). Timing is not a question for a trial, however, when, as in this case, an employer has offered undisputed evidence that it had already decided to let the employee go. *See, e.g.*, *Berg v. TXJ Companies*, No. 12-11, 2013 WL 3242472, at *8 (D. Mont. June 24, 2013); *Jones v. Nevada*, No. 14-01930, 2016 WL 4707987, at *3 (D. Nev. Sept. 7, 2016). Otto has cited undisputed evidence that it would have fired Post for legitimate reasons whether or not Post had requested leave. Undisp. Facts Nos. 41, 43, 63. It also is undisputed that Otto would have terminated Post even if Stuckey had not been able to take on the Aquatic Park Project. *See* Barrett Decl. ¶¶ 11–12; Stuckey Decl. ¶ 4; R. Ussery Decl. ¶¶ 11–14.

Finally, Post contends the court must deny summary judgment to permit him to cross-examine Messrs. Ussery, Barrett and Stuckey at trial and, by extension, to permit a jury to decide whether they are credible. But "neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983); *see also, e.g.*, *Noguera v. Davis*, 5 F.4th 1020, 1056 & n. 12 (9th Cir. 2021) (reaffirming potential cross-examination does not generate a genuine dispute of fact).

In sum, Post has not cited evidence a jury could rely on to decide Otto denied him benefits under the FMLA or CFRA. Even when the court views the evidence in the light most favorable to Post's claims, as it must be at this stage, it remains undisputed that Otto would have terminated Post's employment regardless of his leave request. The court grants summary judgment of these claims.

Post agrees the success of his FEHA wrongful termination claim stands or falls with his FMLA and CFRA claims. Opp'n at 9. The court grants summary judgment on this claim as well.

/////

/////

### B. Age Discrimination

California law prohibits employers from terminating employees over the age of forty based on their age. Cal. Gov't Code §§ 12926(b); 12940(a). California uses the *McDonnell Douglas* burden-shifting framework for age discrimination claims. *See Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017) (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354 (Cal. 2000), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, "the plaintiff bears the burden of establishing a prima facie case, which raises a presumption of discrimination." *Id.* To establish a prima facie case, employees must show they were (1) at least forty years old, (2) performing their job satisfactorily, (3) discharged, and (4) "either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination." *Id.* at 1146 (quotation marks and citations omitted). The burden then "shifts to the employer to rebut this presumption by producing admissible evidence sufficient to show that 'its action was taken for a legitimate, nondiscriminatory reason.'" *Id.* at 1145–46 (quoting *Guz*, 24 Cal. 4th at 355). "If the employer sustains its burden, the presumption established in the first step disappears, and the plaintiff must raise a triable issue suggesting that the employer's proffered reason is mere pretext for unlawful discrimination, or offer evidence of discriminatory motive." *Id.* at 1146.

As explained above, it is undisputed Post was not performing his job to Otto's satisfaction at the time he was terminated. In the years leading up to his termination, his performance reviews consistently documented Otto's concerns with his interpersonal and communication skills. Barrett Decl. ¶ 9; R. Ussery Decl. ¶ 5; *see also* Perf. Review 2017, Ex. 1 at 11–12 (mentioning problems with communication and teamwork); Perf. Review 2018, Ex. 2 at 16, 19 (same); Perf. Review 2019, Ex. 3 at 23, 26 (same). Robert Ussery had become concerned that Post would abandon the Aquatic Park Project. R. Ussery Decl. ¶ 7. Post had also used inappropriate and derogatory language in the workplace and had treated his colleagues "terribly." *Id.* ¶ 9; Undisp. Facts No. 30. Post has not shown he could carry his burden at the first stage of the *McDonnell-Douglas* framework. For that reason, he has not shown in response to Otto's motion he could

prevail on a claim of age discrimination if this case went to trial.  The court grants summary judgment of the age discrimination claim.

### IV. CONCLUSION

The courts **grants summary judgment in full** to Otto.

This order resolves ECF No. 11 and **closes the case**.

IT IS SO ORDERED.

DATED:  March 2, 2023.

<u>                                                          </u>
CHIEF UNITED STATES DISTRICT JUDGE